OPINION
On October 24, 1997, appellant, Marvin Bolden, was indicted by the Portage County Grand Jury on the following: two counts of driving under the influence ("DUI"), specified as felonies of the fourth degree, in violation of R.C. 4511.19(A)(1) (A)(4); and two counts of aggravated vehicular assault, also felonies of the fourth degree, in violation of R.C. 2903.08(A) (B). The indictment stemmed from allegations that, on October 17, 1997, appellant drove a pickup truck while intoxicated, crossed onto the wrong side of a county road, and crashed into an oncoming vehicle at a high rate of speed causing life threatening injuries to the two occupants of the other vehicle. It was further alleged that this was not appellant's first drunk driving offense having been convicted of more than three DUI offenses within six years of the date of the current offense. To the above charges, appellant entered an initial plea of not guilty.
On January 5, 1998, a change of plea hearing was held wherein appellant, with counsel, entered a negotiated plea of guilty to the two counts of aggravated vehicular assault as set forth in the indictment. The trial court entered a nolle prosequi as to the remaining counts in the indictment. Before accepting appellant's guilty plea the trial court engaged in the following discussion with appellant pursuant to Crim.R. 11 and pertinent to this appeal:
 "THE COURT: Mr. [B]olden, you understand these charges in Count No. 3 and 4 of aggravated vehicular assault?
"[APPELLANT]: Yes, Your Honor, I do.
 "THE COURT: You understand those are felonies of the fourth degree?
"[APPELLANT]: Yes.
 "THE COURT: And that if the Court should determine that you should be imprisoned, you could be imprisoned anywhere in monthly increments from six through 18 months, you understand that?
"[APPELLANT]: Yes, sir, I do.
 "THE COURT: You understand that also calls for [a] possible fine of up to $5,000 and costs?
"[APPELLANT]: Yes.
"THE COURT: And a license suspension?
"[APPELLANT]: Yes.
 "THE COURT : You also understand that when you enter a plea of guilty, the Court will refer this matter for [a] sentencing investigation, have a hearing at a later date on sentencing, and the Court may determine from that investigation that you should be imprisoned, you understand that?
"[APPELLANT]: Yes, sir."
In addition to the above Crim.R. 11 colloquy, appellant signed a document entitled "WRITTEN PLEA OF GUILTY" and filed with the court on January 7, 1998, wherein appellant acknowledged the following with respect to the sentence he could expect to receive:
 "1. That I have been informed by my Attorney and by the Judge, and I understand the nature of the charges(s) [sic] to which I am pleading guilty, to wit: COUNT 3 4 AGGRAVATED VEHICULAR ASSAULT, A FELONY OF THE FOURTH DEGREE, O.R.C. 2903.08(A) 
(B) and that it/they carry a maximum penalty of $5,000 + COST [sic] 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, or 18 MONTHS IN PRISON and that the prison term the judge imposes will be the term served."
Following a presentence investigation, appellant came for sentencing before the trial court on April 27, 1998. At that time, appellant, the victims, and the victim's respective families gave testimony on the record as to the profound impact the accident of October 17, 1997 had on their lives. The trial court subsequently sentenced appellant to the maximum sentence allowable for a fourth degree felony, eighteen months imprisonment as to each count to run consecutively. Thus, appellant's sentence amounted to a total of thirty-six months in prison.
Immediately after the trial court announced its sentence, appellant asserted that the thirty-six month prison sentence did not conform to his understanding of the sentence he could expect to receive as previously represented by the state in plea negotiations. Specifically, appellant claimed that the prosecution represented to him that his sentence would be concurrent and that this agreement was evidenced both by the Crim.R. 11 colloquy and the "WRITTEN PLEA AGREEMENT" that stated the maximum sentence as eighteen months. The prosecutor admitted that appellant's understanding of the plea agreement was "correct in some respects." Specifically, the prosecutor indicated that he would recommend to the court that appellant receive the maximum eighteen-month sentence but would remain silent as to whether the two charges would run consecutive or concurrent. However, the above terms of the underlying plea agreement, as conveyed by the prosecution at appellant's sentencing hearing, were not conveyed to the trial court prior to appellant's change of plea hearing as required by Crim.R. 11(F).
Both appellant and the prosecutor continued to argue back and forth as to their understanding of the plea agreement until the trial court interrupted to query whether the victims had been consulted before a plea agreement had been reached. The record then discloses the following discussion that took place at the very end of appellant's sentencing hearing:
 "THE COURT: Well, the question I wanted you [the prosecutor] to ask the victims was whether or not you had communicated with them what the maximum that he would receive after the plea bargain. I know what they [presumably the defense] want. You follow me? In order to confirm one or the other statements here.
 "[THE PROSECUTOR]: I can't remember. Does anybody here remember what was said?
 "THE COURT: Was it represented to you folks that the maximum that he would receive would be 18 months?
 "[ONE OF THE VICTIMS]: I understood it was going to be 18 months on each person that was in the car, each victim.
"THE COURT: Was that represented to you?
"[ONE OF THE VICTIMS]: That's the way I understood it.
 "THE COURT: And I know you folks want to be fair about it, too, right?
"[ONE OF THE VICTIMS]: Yes.
 "THE COURT: The Court's sentence will stand. There is nothing in the record indicating otherwise. I don't think a single sentence reaches the gravity of this situation."
The following day, April 28, 1998, the trial court filed its judgment entry formally sentencing appellant to two definite terms of imprisonment of eighteen months on each count to run consecutively. That same day, April 28, 1998, appellant filed a motion seeking to vacate his guilty plea based on alleged representations made by the prosecutor that his prison sentence would not exceed a total of eighteen months. The trial court stayed execution of sentence pending resolution of appellant's "motion to vacate," but ordered that appellant be confined in the Portage County Jail pending disposition of said motion. The record before this court contains no decision by the trial court as to appellant's motion to vacate. However, the record does contain a returned "WARRANT TO CONVEY," evidencing that appellant was sent to the Lorain Correctional Institution in Grafton, Ohio. On May 26, 1998, appellant filed a timely notice of appeal from the trial court's April 28, 1998 sentencing entry and now asserts the following assignment of error for our review:
 "[Appellant] was denied his right under [Crim.R. 11] to rely upon the conditions represented by the Prosecutor to the Court which conditions and promises were accepted by the Court at the plea and then which the Court refused to carry out at sentencing.
 "[Appellant] submits that a promise by the Prosecutor to dismiss 2 counts of the indictment and limit the maximum of [appellant's] incarceration is binding upon the State and the Court in trying to enforce the plea agreement and further that if the State and the Court do not abide by those conditions the plea is null and void and must be either vacated or the original terms of the plea be implemented."
In his sole assignment of error, appellant alleges that he is entitled to rely on the Crim.R. 11 colloquy that he had with the trial court judge as well as the terms of his written plea of guilty informing him that he faced a total of eighteen months in prison, not the thirty-six month sentence that he received at his sentencing hearing. The apparent confusion regarding appellant's sentence was caused when the trial court failed to inform appellant whether he could expect concurrent or consecutive sentences with his guilty plea. While it is entirely appropriate for a trial court to inform a defendant that his sentences may be served either concurrently or consecutively, and this is the preferred practice to prevent confusion such as exists in this case, Crim.R. 11 does not require, as currently written, that an accused be told of this information at the sentencing hearing.
Crim.R. 11(C)(2) states in pertinent part as follows:
 "In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:
 "(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing." (Emphasis added.)
Under current Ohio Law, failure to inform a defendant who pleads guilty that his sentences may run consecutively rather than concurrently is not a violation of Crim.R. 11(C)(2) and does not render the plea involuntary. State v. Johnson (1988), 40 Ohio St.3d 130, at the syllabus.[1] In Johnson, an accused pled guilty to three crimes: robbery, forgery and aggravated robbery. In the Crim.R. 11 colloquy with the accused, the trial court informed him of the nature of each charge separately along with the maximum penalty for the individual charge. He was not told whether the sentences could be served consecutively or concurrently. The accused was later sentenced, without objection, to consecutive terms of incarceration. He subsequently filed a motion to withdraw his plea arguing that the court's Crim.R. 11 colloquy failed to inform him as to all sentencing possibilities, thus, denying him the ability to make an informed plea of guilty. The Supreme Court of Ohio disagreed and held as follows:
 "We conclude that neither the United States Constitution nor the Ohio Constitution requires that in order for a guilty plea to be voluntary a defendant must be told the maximum total of the sentences he faces, or that the sentence could be imposed consecutively. Therefore, even though the trial court here did not specifically state that such sentences could run consecutively, but did explain the maximum sentences possible, there was no deprivation of appellee's constitutional rights." Id. at 133.
In the instant case, possibly because both offenses involved the same crime, the trial court did not state to the defendant the maximum sentence for each of the crimes as had been done by the trial court in Johnson. The trial court merely told the appellant that he "could be imprisoned anywhere in monthly increments from six through 18 months." Because the trial judge did not state that eighteen months was the maximum sentence foreach of the charges against appellant, appellant's understanding (or misunderstanding) of the conditions under which he pled guilty was perpetuated by the court.
The purpose of Crim.R. 11 is to "remed[y] the problems inherent in a subjective judgment by the trial court as to whether a defendant has intelligently and voluntarily waived his constitutional rights and [to] ensur[e] an adequate record on review by requiring the trial court to personally inform the defendant of his rights and the consequences of his plea and determine if the plea is understandingly and voluntarily made."State v. Stone (1975), 43 Ohio St.2d 163, 167-168. In the instant case, we have concerns over the trial court's handling of this matter and the determination as to whether appellant's guilty plea was voluntarily made. During the plea hearing, it appeared as though the plea was voluntary based on the court's compliance with Crim.R. 11; however, at sentencing it became abundantly clear that neither the prosecution nor appellant understood the exact terms of the agreement. Upon sentencing, appellant immediately objected, claiming that the sentences were not part of the agreement upon which he made his plea. This was sufficient to raise the issue of whether appellant's plea was made voluntarily.
It is apparent that appellant believed his guilty pleas would result in a maximum eighteen-month sentence. The prosecutor at the sentencing hearing made statements that he was not exactly sure what representations he may have made to appellant, the victims, or the victims' families. It was at this point that the trial court asked the victims about their understanding of the plea agreement and pronounced sentenced based on the victims' understanding of said agreement. The beliefs of appellant's victims were irrelevant to the determination of whether appellant's plea was knowingly and voluntarily entered into. The record supports appellant's assertions that he did not fully understand the consequences of his plea, rendering the plea involuntary.
The prosecution did not fully comply with Crim.R. 11(F) as evidenced by statements made at appellant's sentencing hearing wherein a prosecutor stated that he told appellant he would recommend to the court a maximum eighteen-month sentence but would remain silent as to whether the two charges would be served consecutively or concurrently. The record reveals that the trial court was not informed of this underlying basis for appellant's plea at the accused's change of plea hearing. This court has had an occasion, recently, to discuss the perils of the prosecution's failure to perform its duties under Crim.R. 11(F) and this case underscores the problems that can result when compliance with mandatory statutory duties are not strictly adhered to.
When, at sentencing, a defendant makes an immediate objection to his sentence on the grounds that it was not part of his plea bargain, and upon inquiry, neither the prosecution nor defense can ascertain the terms of the agreement, the agreement is ambiguous and the plea should be vacated. In this case, it is clear that there was never a "meeting of the minds" with regard to the plea arrangement. Appellant made his objection in a timely manner at the sentencing hearing. He also filed a motion to vacate his plea the next day. Under the totality of the circumstances, appellant's plea was not voluntary. That this fact was not ascertained until sentencing should not prevent the court from vacating it as such.
In vacating appellant's plea, we offer no opinion as to the merits of the underlying offense for which appellant is charged. We are mindful of the gravity of the offense with which he is charged and the evidence that was presented at the sentencing hearing. However, it is apparent, under the circumstances of this case, that appellant did not have a proper understanding of the maximum sentence he could expect to receive and voiced his objections to the sentence at a time when the trial court could have taken corrective action to minimize the effect of this misunderstanding. If appellant did not receive a benefit from the bargain he entered into and believes that he may receive a lesser sentence upon exercising his rights to a trial on all of the counts as set forth in the indictment, appellant is certainly entitled to exercise those rights. Appellant's plea was not voluntary or knowing, and therefore it was error for the trial court to not permit him to withdraw his guilty plea.
Based on the foregoing, we find merit, in part, to appellant's assigned error. The judgment of the trial court is reversed and this matter is remanded for further proceedings consistent with this opinion.
FORD, P.J., NADER, J., concur.
[1] The syllabus in Johnson reads as follows:
 "Failure to inform a defendant who pleads guilty to more than one offense that the court may order him to serve any sentences imposed consecutively, rather than concurrently, is not a violation of Crim.R. 11(C)(2), and does not render the plea involuntary."